FILED
U.S. DISTRICT COURT

FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

BY:

BY:

| | |
|---|---|
| KARL DEE KAY,<br><br>      Plaintiff,<br><br>  v.<br><br>NANCY BEMIS et al.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Lead Case: 2:05-CV-995 DS<br>Member Case: 2:06-CV-23<br><br>District Judge David Sam<br><br>Magistrate Judge David Nuffer |

Plaintiff, Karl Dee Kay, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2007). Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id.* 1915. Before the Court are motions to dismiss two of the defendants in the lead case, and a separate motion to dismiss all claims against the consolidated defendants from the member case.

## ANALYSIS

### I. Background

This case consists of two separate suits challenging under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), *see* 42 U.S.C.A. §§ 2000cc *et seq.* (West 2009), restrictions on Plaintiff's right to

practice Wicca[1] while in Utah Department of Corrections' (UDC) custody.  In the lead case, 2:05-CV-995-DS (filed December 1, 2005), Plaintiff alleges interference with his religious observance while at the Bonneville Community Correctional Center (BCCC), a halfway house operated by UDC.  The lead case names as defendants numerous BCCC officials in their individual capacities.  On January 25, 2007, the Court dismissed the Complaint in the lead case for failure to state a claim, however, the Tenth Circuit subsequently reversed the dismissal in part, concluding that Plaintiff's Complaint sufficiently pleaded claims under the First Amendment and RLUIPA.  The case was remanded for further proceedings and Plaintiff was allowed to file an Amended Complaint.

The member case, 2:06-CV-23 (filed January 6, 2006), challenges restrictions imposed on Plaintiffs religious practices during his confinement at the Utah State Prison (USP), prior to his release to BCCC.  The original Complaint and First Amended Complaint filed in the member case were dismissed for failure to state a claim and Plaintiff timely filed a Second Amended

---

[1] "Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity.  Its practices include the use of herbal magic and benign witchcraft."  O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400 (7th Cir. 2003) (internal quotation omitted).

2

Complaint on September 17, 2007, naming various prison officials as defendants.  Based on the Tenth Circuit's reasoning in the BCCC case the Court found Plaintiff's Second Amended Complaint sufficient to state a claim.

Following remand of the lead case from the Tenth Circuit the above cases were consolidated and the United States Marshals Service was ordered to complete service of process upon Defendants.  After being properly served the BCCC defendants--with the exception of Defendants Bodily and Schube who have filed motions to dismiss--filed timely Answers to Plaintiff's pleadings.[2]  The consolidated USP defendants, on the other hand, filed a motion to dismiss which is now before the Court.  The defendants also filed a combined *Martinez* Report addressing Plaintiff's allegations and explaining relevant UDC policies. The BCCC defendants request that after ruling on the pending motions to dismiss the Court enter a briefing schedule for summary judgment proceedings based on the information presented in the *Martinez* Report.

---

[2]  Defendants Stamper, Bemis, Green and Heywood answered the original Complaint on April 2, 2008, and answered the Amended Complaint on July 28, 2008.

## II. USP Defendants' Motion to Dismiss

The consolidated USP defendants move for dismissal of all claims against them based on *res judicata* and the *Rooker-Feldman*[3] doctrine. Although Defendants' motion raises *res judicata* before addressing the applicability of the *Rooker-Feldman* doctrine, because *Rooker-Feldman* is jurisdictional in nature the Court must determine its applicability before considering Defendants' *res judicata* argument. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554-55 (7th Cir. 1999).

### A. *Rooker-Feldman* Doctrine

#### i. Legal Standard

The *Rooker-Feldman* doctrine is a jurisdictional prohibition based on 28 U.S.C. § 1257 which divests lower federal courts of subject-matter jurisdiction over appeals from state-court decisions. *See* 28 U.S.C.A. § 1257 (West 2009). The doctrine "bars a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court . . . ." *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998). The *Rooker-Feldman*

---

[3] The *Rooker-Feldman* doctrine derives its name from two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

4

doctrine asks:

> [I]s the federal plaintiff seeking to set
> aside a state judgment, or does he present
> some independent claim, albeit one that
> denies a legal conclusion that a state court
> has reached in a case to which he was a
> party?  If the former, then the district
> court lacks jurisdiction; if the latter, then
> there is jurisdiction and state law
> determines whether the defendant prevails
> under principles of preclusion.

*GASH Assoc. v. Village of Rosemont, Ill., 995 F.2d 726, 728 (7th Cir. 1993)*.  The *Rooker-Feldman* doctrine "prohibits a lower federal court [both] from considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kenmen Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002)* (internal citation and quotations omitted).  A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S. Ct. 1519, 1533 (1987)*(Marshall, J. concurring).  Moreover, a federal claim is barred if "the injury alleged by the federal plaintiff resulted from the state court judgment itself," as opposed to being distinct from that judgment.  For *Rooker-Feldman* to apply the state court decision must be final.  See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287, 125 S. Ct. 1517,*

1522-23,1526 (2005). A state court decision is final "if a lower
state court issues a judgment and the losing party allows the
time for appeal to expire." _Bear v. Patton, 451 F.3d 639, 642
(10th Cir. 2006)_.

### ii. *Rooker-Feldman* Analysis

The USP Defendants argue that under *Rooker-Feldman* the Court
lacks subject matter jurisdiction over Plaintiff's First
Amendment free exercise claims because Plaintiff's present suit
essentially seeks to overturn a prior decision of the Utah state
courts. Attached as Exhibit B to Defendants' supporting
memorandum is an Order from the Utah Third Judicial District
Court granting summary judgment against Plaintiff in *Kay v.
Friel*, No. 050901211 (Salt Lake D. Utah August 17, 2005).
According to that Order, in 2005 Plaintiff filed a state court
motion for extraordinary relief against Warden Friel challenging
the prison's refusal to allow Plaintiff to possess tarot cards to
practice his Wicca religion. Based on the evidence presented the
state court found that the prohibition on tarot cards was
reasonably related to legitimate penological interests in
promoting institutional safety and security, as required under
_Turner v. Safely, 482 U.S. 78, 107 S. Ct. 2254 (1987)_.
Accordingly, the state court concluded that the prohibition on
tarot cards did not violate the First Amendment and that Warden

6

Friel was entitled to summary judgment.  As shown by Defendants' Exhibit C that decision was subsequently upheld by the Utah Court of Appeals in _Kay v. Friel_, No. 20050748-CA, 2005 WL 3131590 (Utah App. Nov. 25, 2005)(per curiam).

Plaintiff concedes that his tarot card claim is barred under _Rooker-Feldman_ based on the state court's prior decision, however, Plaintiff argues that his additional claims against the USP defendants in this case--based on the denial of other religious items including tobacco, spices, crystals, books, sacred items box, wand, AD&D game etc.--are not barred by _Rooker-Feldman_.  Although the state court's Order does include findings of fact relevant to some of the additional claims raised by Plaintiff here, the Court agrees with Plaintiff that the state court's holding addresses only the tarot card issue, therefore, Plaintiff's additional claims are not barred by _Rooker-Feldman_.

Accordingly, based on the _Rooker-Feldman_ doctrine and the prior state court judgment the Court concludes that it lacks subject matter jurisdiction to hear Plaintiff's claim regarding denial of tarot cards at the prison and that claim is dismissed. The Court will now address whether Plaintiff's remaining claims against the USP defendants in the member case are barred by _res judicata_.

### B. **Res Judicata**

7

### i. **Legal Standard**

As the Tenth Circuit has explained, "*res judicata* bars a
claim or issue that was actually decided or could have been
decided in a previous action." *Kenmen Engineering v. City of
Union*, 314 F.3d 468, 479 (10th Cir. 2002); *see also Baker v.
General Motors Corp.*, 522 U.S. 222, 233, n. 5, 118 S. Ct. 657,
664, n. 5 (1998) ("a valid final adjudication of a claim
precludes a second action on that claim or any part of it").
Under 28 U.S.C. § 1738, commonly known as the full faith and
credit statute, federal courts are required to give the same
preclusive effect to a state court judgment that the judgment
would receive in the courts of the issuing state. *See* 28
U.S.C.A. § 1738 (West 2009). "The United States Supreme Court
has determined that § 1738 and traditional rules of preclusion
are applicable to § 1983 actions." *Jarrett v. Gramling*, 841 F.2d
354, 356 (10th Cir. 1988).

Claim preclusion is usually raised as an affirmative defense
in the answer to the complaint, or on motion for summary
judgment. *See* 18 Moore's Federal Practice § 131.50[1]-[3] (3d
ed. 2002). However, "where the substantive rights of parties are
not endangered, a district court may in its discretion consider
*res judicata* issues raised by motion to dismiss, rather than by
the more usual form of an answer to a complaint." *Limerick v.*

8

Greenwald, 666 F.2d 733, 736 (1 Cir. 1982) (citing Diaz-Buxo v.

Trias Monge, 593 F.2d 153 (1 Cir. 1979)).  A court may also raise

the issue of preclusion on its own motion, in appropriate cases.

See Arizona v. California, 530 U.S. 392, 412, 120 S. Ct. 2304,

(2000)(allowing that res judicata might be raised sua sponte in

"special circumstances").

     A federal court asked to determine whether a claim before it

is precluded by a previous state court decision must look first

to preclusion principles of the state wherein the rendering state

court resides, in this case Utah.  See Marrese v. American

Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-83, 105 S. Ct.

1327, 1331-33 (1985) (quoting 28 U.S.C. § 1738).  The Utah

Supreme Court has held that in order for claim preclusion to bar

a subsequent cause of action, a plaintiff must satisfy the

following three requirements:[4]

> First, both cases must involve the same
> parties or their privies.  Second, the claim
> that is alleged to be barred must have been
> presented in the first suit or must be one

---

[4]  Federal courts require three elements to establish claim
preclusion: (1) identity of the parties or their privies in both
suits; (2) identity of the cause of action in both suits; and (3)
a final judgment on the merits in the earlier action.  Yapp v.
Excel Corp., 186 F.3d 1222, 1227 (10th Cir. 1999).  The Utah
Court of Appeals has observed that "the legal analysis under the
claim preclusion branch of res judicata in the Utah common law is
virtually identical to that in the federal common law." Youren
v. Tintic School Dist., 86 P.3d 771, 772 (Utah App. 2004).

> *that could and should have been raised in the*
> *first action.*  Third, the first suit must
> have resulted in a final judgment on the
> merits.

*Macris & Associates, Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219

(Utah 2000) (emphasis added).  The Utah courts have adopted the

rule that "a party is required to include claims in an action for

*res judicata* purposes only if those claims arose before the

filing of the complaint in the first action."  *Id. at 1220*.

Thus, under Utah claim preclusion law "a plaintiff must include

claims in a suit for *res judicata* purposes if the plaintiff was

aware of the facts upon which the latter claims were based at the

time the first suit was filed."  *Id.*

### ii. *Res Judicata* Analysis

Plaintiff concedes that the first and third elements for

claim preclusion are satisfied here because the USP Defendants

were in privity with the defendant in Plaintiff's prior state

court case (Warden Friel) and a final judgement was rendered.

Plaintiff, however, argues that the second element is not

satisfied here because his present suit alleges additional

religious infringements which "[were] not raised and need not

have been raised in the state court action" including "the denial

of Wiccan books, religious silver metallic pendant, herbs,

incense, precious stones and crystals, and time and place for

10

group or solitary worship." (Mem. Opp. at 8.)  Plaintiff asserts

that these deprivations were "an entirely separate event from the

denial of tarot cards" raised in the state court suit and,

therefore, they are not barred by claim preclusion.  (Mem.  Opp.

at 9.)

Plaintiff's argument regarding the nature and timing of his

remaining claims is not supported by the record.  In fact,

Plaintiff's Amended Complaint clearly shows that prior to filing

his state court suit Plaintiff was well aware of the prison's

additional restrictions on his religious exercise besides the

tarot card ban.  Plaintiff alleges in his Amended Complaint that

he filed numerous grievances challenging all manner of prison

restrictions on Wicca religious observance, including *inter alia*

denial of group worship opportunities, role-playing games,

metallic religious symbols, a paid Wicca chaplain, a

pentacle/pendant necklace, and religious celebrations.  (Am.

Compl. at 21-27.)  Plaintiff also states that prior to filing his

state court suit he received numerous grievance responses from

all levels of the prison administration denying his requests for

various religions items and accommodations.  Based on these

allegations, and the supporting grievance documents attached to

Plaintiff's pleadings, Plaintiff cannot possibly show that he was

unaware of the relevant facts underlying his additional claims

11

against the USP Defendants when he filed his state court suit challenging the tarot card ban.  Therefore, the Court rejects Plaintiff's argument that his remaining claims were entirely separate from his tarot card claim and could not have been pursued in his prior state court case.

Plaintiff also argues that based on his *pro se* status he should be allowed to pursue his additional claims here regardless of whether he could have brought them in his state court case. The Court is not convinced that Plaintiff should be excused from the claim preclusion requirements based merely on his *pro se* status or lack of legal training.  As the Tenth Circuit has recognized, "a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." <u>Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)</u>.  Excusing pro se litigants from compliance with preclusion rules would undermine the very purposes for which they were developed, namely, to prevent repetitious and vexatious litigation and to conserve judicial resources.  Allowing Plaintiff to bring his numerous claims piecemeal would not only waste judicial resources it would also cause considerable hardship to Defendants.

Thus, the Court concludes that Plaintiff's remaining claims

against the USP Defendants could and should have been brought in Plaintiff's prior state court case, therefore, those claims are now barred by claim preclusion and must be dismissed.[5]  Moreover, because all claims against them have been dismissed, each of the Defendants named in the member case are dismissed from this suit.

---

[5]  The Court notes that Plaintiff's claims in the lead case stem from religious restrictions imposed at BCCC following Plaintiff's release from prison, therefore, those claims could not have been included in the prior state court case and are not precluded by *res judicata.*

13

### III. **Motions to Dismiss Defendants Schube and Bodily**

Defendants Schube and Bodily, parties in the lead case, move for dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(6).  Schube and Bodily argue that the allegations in Plaintiff Amended Complaint are not sufficient to state a claim against them.

### A. **Rule 12(b)(6) Standard**

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice.  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001).  When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  Moreover, when the plaintiff is proceeding pro se the Court must construe the pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Id.*  However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  While a plaintiff need not describe every fact in specific detail, "conclusory allegations without

14

supporting factual averments are insufficient to state a claim on which relief can be based." _Id._

The Supreme Court recently clarified the standard for motions to dismiss by stating that a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). The Tenth Circuit has interpreted this to mean that "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." _Shero v. City of Grove_, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting _Twombly_, 127 S. Ct. at 1965). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." _Robbins v. Oklahoma_, 519 F.3d 1242, 1247 (10th Cir. 2008). And, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." _Ridge at Red Hawk, L.L.C. v. Schneider_, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." _Robbins_, 519 F.3d at 1248.

15

## B. Defendant Schube

Plaintiff's Amended Complaint alleges that Schube was employed by BCCC as a licensed clinical social worker involved with the Sex Offender Treatment Program (SOTP).  During an SOTP group therapy session Schube allegedly questioned Plaintiff about the length of his hair, to which Plaintiff responded that his hair "is religiously sacred and symbolic to his Wiccan beliefs." (Am. Compl. at ¶22.)  Plaintiff alleges that Schube later belittled Plaintiff's religion, questioned the sincerity of his religious beliefs, and told him that he would not graduate from SOTP unless he cut his hair.  Plaintiff alleges that Schube's actions amounted to religious discrimination in violation of the First Amendment and cruel and unusual punishment under the Eighth Amendment.

In order to state a viable free-exercise claim Plaintiff must satisfy a two-step inquiry.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  First, Plaintiff must allege facts showing that Defendant's actions substantially burdened Plaintiff's sincerely held religious beliefs.  *Id.*  Once Plaintiff makes such a showing Defendants may defend their actions by showing that they were justified by a legitimate penological interest.  *Id.*  At that point the Court must balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.

16

<u>Ct. 2254(1987)</u>, to determine the reasonableness of the challenged
action or regulation.  <u>Id.</u>

Here, Plaintiff has not satisfied his initial burden of
showing that his religious beliefs were substantially burdened by
Schube's actions.  Although Plaintiff states that he felt
"threatened", "chastised," "ridiculed" and "belittled" by
Schube's comments there is no indication that Plaintiff's
religious observance was actually burdened in any way.  Plaintiff
does not allege that Schube actually forced Plaintiff to cut his
hair, nor does Plaintiff allege that Schube sanctioned Plaintiff
for refusing to do so.  Moreover, Plaintiff's allegations show
that he had little reason to fear any sanction from Schube
because she was only a back-up "secondary" counselor in the
program and Defendant Bodily, the program director, had
previously told Plaintiff that he did not have to cut his hair.
(Am. Compl. ¶¶ 10, 21-22.)  Because Plaintiff's Amended Complaint
does not show that Schube substantially burdened Plaintiff's
religious beliefs, the Court concludes that Plaintiff's
allegations fail to state claim under the First Amendment.

Plaintiff's allegations also fail to state a claim against
Schube under the Eighth Amendment.  To state a claim for cruel
and unusual punishment based on conditions of confinement a
plaintiff must satisfy both an objective and subjective

17

component.  The objective component is met only if the condition
complained of is "sufficiently serious," meaning that it must
pose "a substantial risk of serious harm" to the inmate.  _Farmer
v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994)_.  The
subjective component requires the plaintiff to show that the
defendant exhibited "deliberate indifference" to the inmate's
health or safety.  _Id. at 832_.  Here, Plaintiff has not shown any
serious threat to his health or safety.  Although Plaintiff may
have suffered emotionally or psychologically as a result of
Schube's actions there is no indication that he faced any
substantial risk of serious harm.  Thus, Plaintiff's Eighth
Amendment Claim against Schube must also be dismissed for failure
to state a claim.

### C. Defendant Bodily

Plaintiff's Amended Complaint alleges that Defendant Bodily
was the director of SOTP and was Plaintiff's "primary one-on-one"
therapist.  Plaintiff alleges that after his encounter with
Schube he contacted a local attorney regarding Schube's alleged
religious discrimination.  After speaking with the attorney
Plaintiff had a conversation with Bodily in which she
"manipulated" Plaintiff into disclosing the nature and details of
the attorney meeting.  Plaintiff alleges that Bodily later
conveyed this information to the entire treatment team and

18

accused Plaintiff of having a persecution complex.

Applying the standards outlined above the Court concludes that Plaintiff's allegations are not sufficient to state a constitutional claim against Bodily. Bodily clearly did not substantially burden Plaintiff's religious exercise, nor did she infringe Plaintiff's free speech rights or prevent him from contacting an attorney or accessing the courts. Even assuming that Bodily disclosed confidential communications between herself and Plaintiff, such disclosure would not amount to a constitutional violation. Thus, the Court concludes that Plaintiff's Amended Complaint fails to state a claim against Bodily, and Bodily's motion to dismiss must be granted.

## D. RLUIPA

The Tenth Circuit interpreted Plaintiff's original Complaint in the lead case as asserting a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). 42 U.S.C.A. §§ 2000cc et seq. (West 2009). Defendants note that although Plaintiff's Amended Complaint cites RLUIPA in the caption no RLUIPA claim is specifically alleged in the body of the pleading, thus, Defendants argue that Plaintiff appears to have abandoned his RLUIPA claim. Given the fact that the Tenth Circuit specifically remanded the lead case for consideration under RLUIPA the Court rejects the notion that Plaintiff has abandoned

19

his RLUIPA claims.  Therefore, the Court must address whether Plaintiff's allegations against Schube and Bodily might be sufficient to state a claim under RLUIPA.[6]

RLUIPA requires strict scrutiny of correctional regulations that infringe upon inmates' religious practices.  Under section 3 of RLUIPA, a correctional institution that receives federal financial assistance is forbidden from "impos[ing] a substantial burden on the religious exercise of [an inmate] . . . unless [it] demonstrates that imposition of the burden on that person-- (1) is in furtherance of a *compelling governmental interest*; and (2) is the *least restrictive means* of furthering that compelling governmental interest."  See 42 U.S.C.A. § 2000cc-1(a) (West 2009)(emphasis added).

Based on the Court's conclusion that Plaintiff's allegations do not show that Bodily or Schube substantially burdened Plaintiff's religious exercise it is apparent that Plaintiff's allegations also do not state a claim under RLUIPA.  As the Tenth Circuit has recognized, the term "substantial burden" as used in RLUIPA is not intended to be given any broader interpretation

---

[6] The Court notes that Plaintiff's Second Amended Complaint in the member case also cited RLUIPA, however, the above holding that Plaintiff's remaining claims in the member case are barred by *res judicata* (*see supra* Part II-B-ii) also applies to any RLUIPA claim against the defendants named in that case.

20

than the Supreme Court's articulation of the concept in the First Amendment context. *See* <u>Grace United Methodist Church v. City Of Cheyenne</u>, 451 F.3d 643, 661 (10th Cir. 2006). Accordingly, the Court concludes that Plaintiff's Amended Complaint fails to state a claim against Defendants Bodily and Schube under RLUIPA.[7]

### IV. Motion for Discovery

Plaintiff has filed a motion for discovery requesting depositions upon written questions under Rule 31(a). See <u>Fed. R. Civ. P. 31(a)</u>. Defendants object to the motion on the grounds that Plaintiff's motion requests more than 10 depositions, Plaintiff has not properly identified the witnesses or the officer before whom the depositions will be taken, and, Plaintiff requests depositions from people who are no longer parties. In lieu of granting Plaintiff's discovery motion, Defendants request that after a ruling has been rendered on the present motions to dismiss any remaining defendants be allowed to file summary judgment motions based on evidence presented in the previously filed *Martinez* Report.

---

[7]  Defendants argue that even if Plaintiff could show a substantial burden on his religious exercise he cannot state a claim against Bodily or Schube under RLUIPA because the Act does not create a cause of action against individuals, as opposed to government entities. *See Smith v. Allen*, 502 F.3d 1255, 1276077 (11th Cir. 2007). In light of its conclusion that no substantial burden has been shown with regard to Bodily or Schube the Court declines to address this argument here.

The Court finds that allowing the remaining Defendants to file a summary judgment motion would help to narrow the remaining issues in this case and prevent the need for unnecessary discovery. Thus, Defendants shall have forty-five days from the date of this order to file their motion for summary judgment. After a summary judgment motion is filed, if Plaintiff believes that additional discovery is necessary to respond he may file a discovery motion within twenty days. Plaintiff's discovery motion shall specifically identify the information sought and shall clearly explain how the information is relevant to the claim or defense at issue. Within ten days Defendants shall respond to the discovery motion and may object to any discovery request that is not specifically tailored to meet Defendants' summary judgment motion or otherwise fails to comply with the Federal Rules of Civil Procedure.

If a timely discovery motion is not filed Plaintiff shall respond to Defendants summary judgment motion within thirty days after it is filed. Plaintiff is hereby notified that in responding to a summary judgment motion he cannot rest upon the mere allegations in his pleadings. Instead, as required under Federal Rule of Civil Procedure 56(e), Plaintiff must come forth with specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

22

## ORDER

Based on the forgoing, **IT IS HEREBY ORDERED** that:

(1) the USP Defendants' motion to dismiss is **GRANTED**, and, all defendants named in the member case (2:06-CV-23) are **DISMISSED** from this action;

(2) Defendant Schube's Motion to Dismiss is **GRANTED**;

(3) Defendant Bodily's Motion to Dismiss is **GRANTED**;

(4) Plaintiff's Motion for Discovery is **DENIED**;

(5) the remaining Defendants shall have forty-five days to file their motion for summary judgment;

(6) Plaintiff may file a motion for discovery in accordance with this Order within twenty days of receiving Defendants' motion for summary judgment, and Defendants may object within ten days; and,

(7) if a timely motion for discovery is not filed Plaintiff shall respond to the summary judgment motion within thirty days.

BY THE COURT:

DATED this _10ᵗʰ_ day of February, 2009.

David Sam

DAVID SAM
United States District Judge